59 CCPA

**Application of Bernard J. MULVEY and Henry L. Wilson.**

**Patent Appeal No. 8686.**

United States Court of Customs and Patent Appeals.

Aug. 17, 1972.

R. Jonathan Peters, Bridgeport, Conn., Frank L. Neuhauser, Washington, D. C., Raymond G. Simkins, Philip L. Schlamp, Bridgeport, Conn., Joseph B. Forman, Arlington, Va., attys. of record, for appellants.

S. Wm. Cochran, Washington, D. C., for Comm. of Patents; R. V. Lupo, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Associate Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

MALETZ, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals af-

firming the action of the examiner in rejecting under 35 U.S.C. § 103 as obvious in view of the prior art all 15 claims in appellants' application for patent.[1] We affirm the decision of the board.

The claims relate to an asbestos jacketed, electrically insulated conductor or cable for use in electrical appliances. Discussed as follows in the specification are certain prior art electrical cables and the problems associated with them which the claimed invention is intended to solve:

Wire or cable used in electrical appliances such as electric ranges, ovens, water heaters, clothes dryers, rotisseries, and similar appliances desirably should exhibit good electrical and moisture-resistant properties. According to the requirements of Underwriters' Laboratories, Inc., this appliance wire must exhibit an established high temperature rating, and for many applications the wire must qualify for a 150° C. rating. Asbestos insulated wire has been used in the appliance industry almost from the beginning despite its relatively poor electrical and moisture-resistant properties. These deficiencies have been outweighed by its outstanding heat resistance which makes it valuable in appliance applications where high ambient temperatures exist. The conventional asbestos wire, such as Type AF or AI, comprises a cellulose acetate tape over the conductor which is then surrounded by the asbestos insulation. The asbestos is impregnated with a hot melt typically comprising a blend of a micro-crystalline wax and a chlorinated resin. The impregnant improves slightly the properties of the wire, such as moisture resistance, and also the cellulose acetate separator upgrades the electrical properties of the asbestos. However, trouble with this wire has occurred especially during periods of high temperature and humidity. Because of the fibrous nature of the insulation, atmospheric moisture can permeate the insulation strata and cause malfunction of devices due to electrical leakage through the wire insulation. Also, at relatively high temperatures, such as during prolonged hot spells, the wax impregnant tends to soften and make stripping of the insulation by mechanical means very difficult. In an attempt to overcome this stripping problem, some users store the wire in refrigerated areas during such periods.

In recent years, cured or cross-linked polyolefin compositions have achieved extensive success for use as an insulation material. The cross-linked polyolefins, such as polyethylene, exhibit superior physical and electrical properties and excellent moisture resistance. However, the temperature rating as established by Underwriters' Laboratories for these compositions is somewhat limited, and further lacks sufficient flame resistance for certain applications such as appliance wire. Certain additives may be incorporated in the polyolefin composition to improve the flame retardance of the composition, but this degrades the thermal and electrical properties required for high temperature applications.

Claim 1 is illustrative of appellant's solution to those problems:

1. An electric conductor comprising: a metallic conductor; a primary insulating layer surrounding said conductor, said insulating layer comprising a cured ethylene polymer; and an inorganic fibrous insulating layer surrounding said primary insulating layer and containing a thermostable, halogenated polymeric-organo-impregnant; said electric conductor characterized by high resistance to moisture and by a temperature rating of 150° C. as es-

1. The application bears serial No. 659,248; was filed on June 2, 1967, as a continuation-in-part of serial No. 465,957, filed June 22, 1965; and is entitled "Insulated Electrical Conductor and Process for Making Same."

tablished by Underwriters' Laboratories standard.

It is apparent from this claim that the present invention may be regarded in one sense as the use of cured, or cross-linked, polyethylene as a primary insulating layer in place of the cellulose acetate tape previously employed in the "conventional" Type AF or AI asbestos wire. According to appellants' brief, their cable has "desirable and previously unattainable high resistances to moisture and to high temperatures" vis-a-vis the prior art.[2] The polyethylene insulating layer contributes moisture resistance, while the second, outer insulating layer comprising an inorganic fibrous material, e.g., asbestos, and a halogenated organic polymer, e.g., neopreme, polyvinyl chloride, chlorinated rubber or chlorinated polyethylene, imparts heat and flame resistance to the cable.

Claims 5–10 are directed to a method of producing the claimed conductor, while the remaining claims contain various limitations relating to the specific materials comprising the fibrous insulating layer and impregnant composition, and the materials used as a filler for the cured polyethylene insulating layer.

The board affirmed the examiner's rejection of the claims over various combinations of the Blodgett,[3] Kauth,[4] Hoekstra,[5] Smyers[6] and Aken[7] references, with primary reliance placed on Blodgett and Kauth.

Blodgett discusses the advent of cross-linked, carbon black-filled polyethylene as insulation for service drop cable in 1958, and the development of subsequent applications of that insulating material for general purpose control and power cables in both "wet and dry" applications. In some cases, Blodgett says, jackets compatible with cross-linked polyethylene can improve cable performance. In particular, according to Blodgett, "The application of a corona resistant jacket which is also flame resistant has the further advantage that the vulcanized polyethylene can be formulated for better electrical and physical properties than are obtainable in a flame resistant polyethylene" itself. Blodgett discloses, inter alia, such halogenated polymers as neoprene, chlorosulfonated polyethylene rubber and polyvinyl chloride as suitable jacket materials, all but the last-mentioned polymer permitting the thus-ensheathed polyethylene insulated cable to pass both of the Underwriters' Laboratories horizontal and vertical flame tests.

Recognizing that Blodgett does not disclose the use of a fibrous asbestos impregnated jacket, the examiner turned to Kauth, who discloses that asbestos has been used "for a considerable time" as a jacketing material for insulated electrical conductors in order to impart heat resistance to the composite structure. Kauth stresses the use of a "heat-proof, flame-proof, moisture-resistant plastic" —in his case, an inorganic plastic which may be mixed with other organic synthetic resin insulations—as an impregnant to render the asbestos jacket water resistant and improve its insulating value.

The examiner further relied on Hoekstra with respect to claims 4, 8 and 15 as evidence of prior art knowledge of the use of chlorinated rubber as an impregnant to render a textile covering for

---

2. That is apparently the case with respect to the "Type AI" cable. Strictly speaking, there is no evidence of record that the Underwriters' Laboratories Temperature rating of the claimed cable is improved with respect to "Type AF" cable of the prior art. According to the specification, the UL Temperature rating of the claimed cable is "equal to Type AF."

3. "Insulations and Jackets for Cross-Linked Polyethylene Cables," IEEE Transactions on Power Apparatus and Systems, No. 69, Dec. 1963, pp. 971–79.

4. U.S. Patent No. 2,382,423, issued August 14, 1945.

5. Alien Property Custodian Application serial No. 321,131, published May 18, 1943.

6. U.S. Patent No. 2,226,590, issued December 31, 1940.

7. U.S. Patent No. 2,335,097, issued November 23, 1943.

an electrical conductor noncombustible; on Aken with respect to claims 9, 10, 14 and 15 for its disclosure of the admittedly conventional use of a paper separator or release material between the conductor and primary insulating layer; and on Smyers for its disclosure of extrusion processes in formation of insulating coverings on conductor bodies.

Against this prior art background, the board stated:

> Each of claims 1 to 15 stands rejected under 35 U.S.C. 103 as for an obvious modification of the electric cable disclosed in the Blodgett reference. * * *
>
> * * * * * *
>
> We note that Blodgett discloses three significant features that are pertinent to the invention expressed in the appealed claims. First, that the cable should have a primary insulation of cross-linked polyethylene; second, that such a cable can be protected from environmental conditions by the use of a jacket; and last, that such a jacket can be made flame proof by the use of a halogenated organic resin. We consider it notoriously old, as exemplified in the Kauth patent, to use asbestos fibers in the jacket of the cable to further increase its resistance to high temperatures and flame. Hence, merely adding such fibers to the flame resistant jacket of Blodgett would be obvious to a person of ordinary skill who wishes to take advantage of what is already well known in the art. * * *

Appellants' arguments here are predicated principally on the view that, given the above-discussed prior art, it would not have been apparent to one of ordinary skill in the art how to fabricate an electrical conductor possessing both good moisture resistance and good heat resistance. We cannot agree. It is clear from Blodgett that, at the time appellants' invention was made, cross-linked polyethylene had already cut a wide swath as a primary insulation material in the electrical conductor art and was known by those in that art to possess a variety of properties which are desirable in an insulated conductor to be used in either wet or dry environments. Appellants' specification itself acknowledges that cured polyethylene was known to have "excellent moisture resistance" in its use as a wire insulation material. It also was already known, as evidenced by Blodgett, that the flame resistance and other properties of that polyethylene wire insulation could be enhanced by surrounding it with a compatible chlorinated organic polymer. In light of those disclosures, we do not think that one of ordinary skill in the art would have had any difficulty in recognizing that a polyethylene-insulated wire, clad with a chlorinated organic polymer, possessed many attributes suggesting its suitability for use in an environment where moisture, heat and flame were known to be potential or actual problems, such as in appliance wire. Confronted with the necessity of further increasing the heat resistance of that jacketed wire combination, we also think it would have been obvious to one of ordinary skill in the art to employ asbestos or other inorganic fibrous material in the outer jacket to that problem, as the record—notably Kauth—shows has long been done with other jacketed wires.[8] It seems to us that appellants have merely selected known materials for their heretofore known effects to achieve but the expected results.

In short, we have considered the differences between the claimed subject matter and the prior art, as well as the evidence of commercial success tendered in the record, but are not persuaded thereby that appellants' invention was non-obvious to one of ordinary skill in the art at the time it was made. The decision of the board is affirmed.

Affirmed.

8. Indeed, as we noted earlier, the specification acknowledges that commercial "Type AF" wire with an outer jacket comprising asbestos and a chlorinated organic polymer has a UL Temperature rating of 150° C.